IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EMILIANO Z., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:21-CV-562-RP |
| HAYS COUNTY JUVENILE DETENTION CENTER and BRETT LITTLEJOHN, in his official capacity, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff Emiliano Z. ("Plaintiff"), (Dkt. 26), and Defendants Hays County Juvenile Detention Center ("HCJC") and Brett Littlejohn ("Littlejohn") (together, "Defendants"), (Dkt. 36). Having considered the parties' arguments, the evidence, and the relevant law, the Court will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

## I. BACKGROUND

This is a disability discrimination case. Plaintiff was confined in HCJC for approximately 48 days, from May 20, 2020, to July 7, 2020. (Compl., Dkt. 1, at 4). Based on his experience of confinement, Plaintiff appeals the dismissal of his claims under the Individuals with Disabilities Act ("IDEA") by Texas Special Education Hearing Officer Kathryn Lewis ("Officer Lewis"). (*Id.* at 3). Plaintiff also asserts Eight Amendment claims under Section 1983. (*Id.* at 8).. Finally, Plaintiff asserts claims against Defendants under Section 504 of the Rehabilitation act of 1973 and under Title II of the American with Disabilities Act. (*Id.* at 8–10).

1

### A. Plaintiff's Confinement

HCJC is a secure correctional facility in San Marcos, Texas, which is operated by the Hays County Juvenile Board. (Littlejohn Aff., Dkt. 35-1, at 3). The Hays County Juvenile Board oversees HCJC. (*Id.*). HCJC provides residential services for pre- and post-adjudication juveniles. (*Id.*).

John H. Woods Charter School—Inspire Academy ("JHW") provides educational services for HCJC residents pursuant to a "Memorandum of Understanding" ("MOU"). (*Id.* at 4; Operative MOU, Dkt. 36-2, at 81). Under the MOU, JHW is the "local education agency" ("LEA") responsible for providing IDEA educational and related services at HCJC. (Defs.' MOU, Dkt. 36-2, at 81). However, the parties dispute which version of the MOU was the operative agreement at the time of these events. Plaintiff presented an unsigned MOU which states that HCJC is responsible for providing counseling services for the residents. (Pl.'s MOU, Dkt. 33-6, at 2).  Defendant presented a signed MOU that assigns the responsibility for counseling services to JHW. (Defs.' MOU, Dkt. 36-2, at 81).

Plaintiff was sent to HCJ on May 20, 2020. (Littlejohn Aff., Dkt. 35-1, at 3; HCJC Admiss. Form, Dkt. 35-1, at 13). At the time of his confinement at HCJC, Plaintiff was 16 years old. When Plaintiff arrived at HCJC, Juvenile Probation Officer Cindy Garza ("Garza") completed a mental and physical profile of Plaintiff based on information he provided. (Mental/Physical Profile, Dkt. 35-1, at 16).  As part of this process, Garza asked Plaintiff whether he was in any special education or resource classes. (*Id.*) The profile form shows that Garza marked "N." (*Id.*). However, Plaintiff alleges that at some point he told the officer that he was in special education. (Pl.'s Resp., Dkt. 37, at 3; Z. Depo., Dkt. 37-1, at 73–74). Garza also noted in the form that Plaintiff did not appear confused, depressed, agitated, or angry, and that he did not appear to be suicidal or violent. (Mental/Physical Prof., Dkt. 35-1, at 16).

As part of the admission process, HCJC administered an initial health assessment and a Behavioral Screening for Plaintiff that same day. (Health Asses., Dkt. 35-1, at 18–23; Behavioral Screening, Dkt. 35-1, at 24). Neither the assessment nor the screening identified any mental health concerns. (Health Asses., Dkt. 35-1, at 18; Behavioral Screening, Dkt. 35-1, at 24).

HCJC also completed a COVID-19 Health Screening Form for Plaintiff; the records note that he had contact with someone who had tested positive in the last month. (COVID-19 Screening Form, Dkt. 35-1 at 26). Plaintiff alleges he had not been exposed to COVID within the previous 14 days. (Pl's Resp., Dkt. 37, at 11). Based on his alleged responses, Plaintiff was placed on a 14-day medical isolation on May 20, 2020. (HCJC COVID-19 Policy, Dkt. 36-2, at 65).

Plaintiff's medical isolation ended on June 4, 2020. (Report, Dkt. 35-1, at 30). Defendants alleges that after Plaintiff returned to the general population, he was briefly placed in disciplinary seclusion twice due to his refusal to participate in daily activities. (Appx., Dkt. 36-1, at 8–9). It is undisputed that during this time, Plaintiff was subject to bullying and threats from other residents. (*Id.*). On June 17, 2020, Plaintiff temporarily left the facility to attend a psychological evaluation by Dr. Keely Crowfoot. (Evaluation, Dkt. 25-3).

On June 18, 2020, Plaintiff was placed on medical observation based on COVID-19 symptoms, and then was placed in quarantine when he tested positive for COVID-19. (Progress notes, Dkt. 25-2, at 22–23; *see also* COVID Test Results, Dkt. 25-2, at 25). Since he was still exhibiting symptoms on July 3, 2020, his quarantine was extended. (Report, Dkt. 35-1, at 44). Plaintiff was released from quarantine on July 6, 2020. (Progress Notes, Dkt. 35-2, at 21). That same day, Plaintiff received a counseling session. (Z. Depo., Dkt. 37-1, at 104). Then, Plaintiff was discharged from HCJC on July 7, 2020. (HCJC Admiss. Doc., Dkt. 35-1, at 13).

Plaintiff alleges that he was denied access to his father though much of his isolation. (Pl.'s Resp., Dkt. 37, at 11). In response, Defendants presented a call log that shows Plaintiff's calls,

3

including seven calls to his father between May 20 and June 4, 2020. (Call Log, DKt. 35-1, at 52). Defendants admit that Plaintiff was not allowed to call his father during his second medical quarantine, but they allege this was due to COVID-19 protocol, as the telephone residents may use is in a public space. (Appx., Dkt. 36-1, at 17. Defendants also allege that Plaintiff was allowed to write letters to his father, and that his father sent at least one email, which they provided to Plaintiff. (*Id.*).

### B. Procedural History

Plaintiff filed this suit on June 21, 2021. (Compl., Dkt. 1). Plaintiff states several claims for relief: (1) Eight Amendment violations under Section 1983, (2) violations under Section 504 of the Rehabilitation Act of 1973 and the American with Disabilities Act of 2008, and (3) an appeal of Texas Special Education Hearing Officer Kathryn Lewis's dismissal of Plaintiff's administrative case. (*Id.* at 7–10).

Plaintiff filed a Motion for Partial Summary Judgment on his Appeal of Administrative Due Process Dismissal on June 16, 2022. (Dkt. 26). Defendant filed a response on July 8, 2022, (Dkt. 31), and Plaintiff replied on July 15, 2022, (Dkt. 33). Plaintiff's only request at summary judgment is for the Court to resolve his appeal of the Officer Lewis's dismissal.

Defendant filed a Motion for Summary Judgment on all claims on July 19, 2022. (Dkt. 36). Plaintiff filed a response on July 26, 2022, (Dkt. 37), and Defendant replied on August 2, 2022, (Dkt. 39).

### II. LEGAL STANDARD

### A. IDEA Administrative Case Appeal

"When addressing a summary judgment motion in the context of an appeal from a Hearing Officer's Decision, the motion 'is simply the procedural vehicle for asking [the judge] to decide the case on the basis of the administrative record.'" *R.B. v. N. E. ISD*, No. SA-20-CV-01441-JKP (W.D.

Tex. filed Dec. 18, 2020) (Order, Dkt. 55, at 9) (citing *El Paso ISD v. Richard R.*, 567 F. Supp. 2d 918, 927 (W.D. Tex. 2008); *Wood v. Katy Indep. Sch. Dist.*, 163 F. Supp. 3d 396, 402–403 (S.D. Tex. 2015). "Consequently, the typical summary judgment legal standards do not apply in reviewing the administrative record in an IDEA case; for instance, the existence of a dispute of material fact will not defeat the motion, and the shifting burdens of proof do not apply." *Id.* (citing *Richard R.*, 567 F. Supp. 2d at 927; *Wood*, 163 F. Supp. 3d at 402–403). "Instead, even though the appellate vehicle is titled a 'Motion for Summary Judgment,' the district court's analysis follows the appropriate appellate standard of review, that is, de novo review of the administrative record, while giving due weight to Hearing Officer's Decision, to reach an independent decision based upon a preponderance of the evidence." *Id.* at *14–15 (citing 20 U.S.C. § 1415(i)(2)(C)).

When a federal district court reviews a state hearing officer's decision in an impartial due process hearing under the IDEA, the court must receive the record of the administrative proceedings and is then required to take additional evidence at the request of any party. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997). Although the district court must accord "due weight" to the hearing officer's findings, the court must ultimately reach an independent decision based on a preponderance of the evidence. *Id.*

In the context of IDEA claim, a district court should not substitute its "own notions of sound educational policy for those of the school authorities which [it] review[s]." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982). Thus, a district court's task is to determine whether a school district complied with the IDEA and not to second guess their educational decision making. See *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir. 2010).

### B. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d

156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

## III. DISCUSSION

### A. Plaintiff's Appeal

Plaintiff asks the Court to reverse Officer Lewis's decision dismissing the administrative case and to remand the case for further proceedings. Plaintiff alleges that, at the time of his confinement, he was eligible for special education and related services pursuant to IDEA. (Compl., Dkt. 1, at 4). Plaintiff further alleges that Defendants failed to properly assess his eligibility for and provide him with special education services under IDEA. (*Id.* at 5). In response to the alleged IDEA violations, Plaintiff initiated state administrative proceedings against several parties, including HCJC. (Pl.'s Mot. Summ. J., Dkt. 26, at 1); Ord. 8 at 1, *Emiliano Z. b/n.f. Elias v. Inspire Academies and the Hays County Juvenile Detention Center*, No. 289-SE-0620 (Tex. Sp. Ed. Hearing Officer Mar. 26, 2021). On March 26, 2021, Officer Lewis granted HCJC's motion to dismiss and dismissed Plaintiff's complaint against HCJC. (Mot. Summ. J., Dkt. 26, at 1). Officer Lewis concluded that under state regulations governing the provision of a Free Appropriate Public Education ("FAPE"), the obligation to provide Plaintiff a FAPE rested with JHW, rather than HCJC. (*Id.* at 3).

Plaintiff argues that Officer Lewis's reasoning was flawed because, per 34 C.F.R. § 300.2, the provisions of IDEA apply to all political subdivisions involved in providing special education services, including juvenile correctional facilities and residential facilities such as HCJC. The Court agrees with Officer Lewis's determination that the obligation to provide Plaintiff with a FAPE rested on JHW, not HCJC. Plaintiff argues that Section 300.2 obligates agencies to share responsibility for the provision of FAPE in residential facilities. (Pl.'s Mot. Summ. J., Dkt. 26, at 3); 34 C.F.R. § 300.2. But while Section 300.2 clearly provides students with disabilities the right to a FAPE in correctional facilities, IDEA and the corresponding federal regulations allow states to determine how to allocate the responsibility for providing these services. (*See T.H. as next friend T.B. v. DeKalb Cnty. Sch. Dist.*, 564 F. Supp. 3d 1349, 1357 (N.D. Ga. 2021) ("[W]hile the state and its political subdivisions are collectively responsible for IDEA compliance, the scope of each subdivision's specific responsibilities depends upon state law."). The cases Plaintiff presents do not say otherwise, and only find joint liability in instances where state law did not clearly allocate responsibilities.

In contrast, Texas law clearly delineates the relationship between the entities involved here and places. The Texas Education Agency and the Texas Juvenile Justice Department have developed and adopted a memorandum of understanding ("MOU") establishing the "responsibilities of school districts and residential facilities for the provision of a" FAPE according to IDEA standards. Tex. Educ. Code § 29.012(d)(1); *see* 19 Tex. Admin. Code § 89.1115 (MOU Regarding Interagency Coordination of Special Education Services to Students with Disabilities in Residential Facilities). And for residential facilities like HCJC, the MOU establishes that "LEAs [local education agencies] must provide or ensure the provision of a FAPE to students with disabilities residing in residential facilities in accordance with the IDEA." Tex. Admin. Code § 89.1115(d)(1)(A).

Here, the state regulations that assign responsibility for the provision of FAPE to students with disabilities place this duty on the applicable local education agency. The local education agency tasked with providing the relevant services for Plaintiff was JHW, not HCJC. Accordingly, the Court will affirm Officer Lewis's order and dismiss Plaintiff's claims under IDEA against HCJC.

### B. Rehabilitation Act and American with Disabilities Act Claims

Title II of the ADA protects against intentional disability discrimination in the provision of public services. 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act protects against intentional disability discrimination by recipients of federal funding. 29 U.S.C. § 794. To make a prima facie case under either Title II of the ADA or Section 504 of the Rehabilitation Act, Plaintiff must establish: "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by a public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020).

Plaintiff claims that, during his stay at HCJC, Defendants denied him psychological and counseling services on account of his disability. (Compl., Dkt. 1, at 5). Plaintiff also claims that, on account of his disability, he was placed in administrative segregation "as a result of his being the victim of bullying by other minors." (*Id.* at 6). It is undisputed that Plaintiff had a qualifying disability. (Defs.' Mot. Summ. J., Dkt. 36, at 5). However, the parties disagree on whether Defendants knew of the disability and its limitations, such that they could have discriminated against Plaintiff by reason of his disability.

To demonstrate intent, Plaintiff must show that Defendants knew of his disability and its consequential limitations. *Windham v. Harris Cnty.*, 875 F.3d 229, 236–37 (5th Cir. 2017). Mere knowledge of the disability is not sufficient; Defendants must have understood "the limitations

9

[Plaintiff] experienced . . . as a result of that disability." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). For example, an entity can know of the disability and limitations if plaintiff requested an accommodation or because the nature of the limitation was open and obvious. *Windham*, 875 F.3d at 236–37.

Plaintiff argues that he notified Defendants of his disability either at intake or through the Psychological Evaluation report Defendant Littlejohn received from Dr. Keely Foot on June 30, 2020. (Pl.'s Resp., Dkt. 36, at 3–4). However, Defendant presented Plaintiff's intake records, which show that none of his intake evaluations revealed any mental health concerns, special education needs, or disabilities. (Defs.' Mot. Summ. J., Dkt. 36, at 5–6; Intake Records, Dkt. 36-1, at 16–24). Plaintiff notes that he testified in a deposition that he remembers he answered yes when he was asked if he received special education at school "the two times when [he] went to" the facility.

However, the testimony is not enough to raise an issue of fact about Defendants' knowledge upon intake. Even if Plaintiff answered yes to the "special education" question, he also claims the accommodations he needed were counseling, therapy, and other support for his mental health needs. (Compl., Dkt. 1, at 7). But as the evidence shows, Plaintiff did not ask for mental health services and reported that he did not suffer from any previous or ongoing mental health conditions or disabilities. Plaintiff presents no other evidence of Defendants' knowledge at intake. His answer to a single question, which he then contradicted in other parts of the intake, does not amount to knowledge on the part of Defendants.

Plaintiff also argues that Defendants knew of his disability because his father requested services, specifically a psychological evaluation, for him. (Pl.'s Resp., Dkt. 37, at 4). Defendants does not deny that Plaintiff could make an accommodations request by proxy. However, the requests were made to Plaintiff's Juvenile Probation Officers. (Z. Depo., Dkt. 39 exhibit B, 28/16-30/17). These probation officers are not HCJC employees; they are employed by the Hays County Juvenile

10

Probation Department. Furthermore, the evidence shows that Plaintiff's father only requested the psychological evaluation, not counseling. A request for evaluation could not, in and of itself, inform Defendants of Plaintiff's "disability and its consequential limitations." *Windham*, 875 F.3d at 236–37.

Finally, even if the Juvenile Probation Officers are not HCJC employees, Plaintiff argues that Defendant Littlejohn knew of his disability because he received the results of Dr. Crowfoot's psychological evaluation directly. But Dr. Crowfoot listed a series of "diagnostic impressions" rather than a conclusive diagnostic. (Psych. Eval., Dkt. 37-4, at 28). Furthermore, even if these diagnostic impressions amount to knowledge, Defendants provided a reasonable accommodation Plaintiff received a counseling session on July 6, 2020, as soon as he was released from medical quarantine and less than a week after Littlejohn received Dr. Crowfoot's report. Plaintiff has not shown Defendants knew of his disability, and in any case, he was provided with a reasonable accommodation. Accordingly, the Court will grant summary judgment in favor of Defendants on the ADA claim and the Rehabilitation Act claim.

### C. Section 1983 Claim against Littlejohn

Finally, Plaintiff makes a Section 1983 claim against Defendant Littlejohn, HCJC's facility administrator, based on alleged Eighth Amendment violations. To establish *Monell* liability under Section 1983, Plaintiff must establish that Littlejohn, the official who took the actions underpinning his claim, was an official that could establish a policy for direct liability; that is, that he was an official with "final policymaking authority." *See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). Whether an official is a final policymaker is an issue of state law. *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 166 (5th Cir. 2016) (citing Jett v. Dall. Indep. Sch. Dist., 7 F.3d 1241, 1245 (5th Cir. 1993)). In *Flores v. Cameron*, the Fifth Circuit held that, under Texas Law, juvenile county boards are the final policymaker responsible for juvenile detention centers. *See Flores v. Cameron Cnty.* 92 F.3d 258, 269

11

(5th Cir. 1996) ("[T]he Juvenile Board possesses the authority to establish [the county's] official policies with respect to the detention center"). Like the board in *Flores*, Hays County Juvenile Board has final policymaking authority for juvenile detention centers in Hays County. HCJC is a subordinate entity. Littlejohn, as an employee of HCJC, cannot be a final policymaker unless policymaker power has been delegated to him.

Plaintiff argues that Hays County Juvenile Board has delegated this policymaking authority. Official policymaking authority may only "be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Plaintiff notes that the Texas Administrative Code delegates the authority to develop, implement, and maintain a policies and procedures manual for the facility to facility administrators like Littlejohn. 37 Tex. Admin. Code § 343.212. However, the Texas Administrative Code is a collection of rules created by executive agencies. Even if it delegates certain duties to Littlejohn, it is not a legislative enactment, and therefore it cannot delegate official policymaking authority.

Plaintiff also argues that the various COVID-19 related policies Littlejohn allegedly instituted "unilaterally" make it obvious that he has been delegated some policymaking authority. However, "[t]he Supreme Court has precluded the possibility of finding a county employee to possess 'de facto policymaking authority.'" *Flores*, 92 F.3d at 269 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)). Since "de facto" authority is precluded, and Plaintiff has not presented any other competent evidence of delegation, the Court finds that Littlejohn is not a policymaker for purposes of *Monell* liability. Therefore, the Court will grant summary judgment in favor of Defendants on this claim.

## IV. CONCLUSION

For these reasons, the Court **ORDERS** as follows. **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (Dkt. 26), is **DENIED**.

**IT IS FURTHER ORDERED** that Officer Kathryn Lewis's Order dismissing Plaintiff's IDEA claims, Ord. 8, *Emiliano Z. b/n.f. Elias v. Inspire Academies and the Hays County Juvenile Detention Center*, No. 289-SE-0620 (Tex. Sp. Ed. Hearing Officer Mar. 26, 2021), is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 36), is **GRANTED.** Defendants are entitled to summary judgment as to all claims against them.

Final judgment will be entered in a separate order.

**SIGNED** on February 15, 2023.

_____

ROBERT PITMAN

UNITED STATES DISTRICT JUDGE